UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DERECK G. WILLIAMS,
    Plaintiff

    v.

RYAN DEVLIN, *et al.*,
    Defendants

Civil Action No. 12-1659 (CKK)

**MEMORANDUM OPINION and ORDER**
(November 9, 2015)

On October 23, 2015, the Court held the second Pretrial Conference in this case. In this Memorandum Opinion and Order, the Court resolves the remaining evidentiary objections that are pending.

**Plaintiff's Jacket**

It is undisputed that Plaintiff did not disclose his jacket during discovery and that Plaintiff did not produce the jacket to Defendants until the October 23, 2015, Pretrial Conference. The Court notes that Plaintiff himself was aware of the existence of the jacket during the entire time this case was pending. The Court also notes that Plaintiff has represented that the jacket was introduced as evidence during Plaintiff's criminal trial for assault on a police officer, and it appears that Plaintiff's counsel could have discovered the jacket's existence from Plaintiff's criminal defense attorney through a timely investigation. Nonetheless, the jacket's existence was not disclosed until after discovery had closed.[1]

Because it was not disclosed during discovery, the parties appear to agree that the only possible basis for admitting this evidence is the exception to the disclosure provisions of Rule 26(a) for evidence used "solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii); *see also Standley v. Edmonds-Leach*, 783 F.3d 1276, 1281 (D.C. Cir. 2015) ("In other words, a party need not disclose a witness pursuant to Rule 26(a) if the evidence will be used 'solely for impeachment,' and the witness may testify at trial even

---

[1] Discovery in this case initially closed on March 28, 2014. Subsequently, the Court extended the deadline for discovery until April 21, 2014, for the limited purpose of allowing Defendants to complete the deposition of an additional witness. After discovery had otherwise closed, the Court entered an order on August 6, 2014, reopening discovery for 45 days for the limited purpose of allowing Defendants to conduct discovery regarding Plaintiff's lost wage claim in light of the fact that Plaintiff had only produced the documents supporting his lost wage claim on May 28, 2014—after discovery had closed. Plaintiff's counsel represented at the October 23, 2015, Pretrial Conference that the jacket has been in her possession since June 2014.

if not disclosed beforehand."). Plaintiff now seeks to introduce the jacket for what he claims is "solely for impeachment." Specifically, Plaintiff represents that the jacket contains boot-prints that directly contradict the testimony that Defendants will give (that they did not kick Plaintiff). Defendants argue that that jacket does not qualify for the "solely impeachment" exception.

Recently, in *Standley v. Edmonds-Leach*, the United States Court of Appeals for the D.C. Circuit reiterated the standard for "solely for impeachment" evidence under Federal Rule of Civil Procedure 26(a).[2] 783 F.3d. 1276, 1281 (D.C. Cir. 2015). Pursuant to this standard tangible evidence may not be introduced, if it is not disclosed, only if it is used "solely for impeachment." *See id.*; Fed. R. Civ. P. 26(a)(1)(A)(ii). The Court of Appeals described a split among courts regarding the scope of the "solely for impeachment" exception. "[S]ome courts have concluded that the impeachment exception is limited to evidence that has no potential utility other than impeachment." *Standley*, 783 F.3d at 1283 (describing approach of First and Fifth Circuits). Other courts have taken an alternative approach, holding that "that undisclosed evidence with both impeachment and substantive qualities may be presented at trial so long as it is strictly used to impeach." *Id.* (citing *DeBiasio v. Ill. Cent. R.R.*, 52 F.3d 676, 686 (7th Cir. 1995)). While the Court of Appeals has not addressed which of these approaches is applicable in this Circuit—either in *Standley* or previously—the Court of Appeals noted that, "[u]nder either approach, the courts have focused on the word 'solely' and our sister circuits have read that term strictly." *Id.* (citing 8A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2053 n.57 (3d ed. 2014)). The Court of Appeals also cited favorably the analysis of the district court in *Hayes v. Cha*, 338 F. Supp. 2d. 470, 503-04 (D.N.J. 2004), regarding the "competing considerations" in applying the "solely for impeachment" standard. *Standley*, 783 F.3d at 1283. In *Hayes*, the New Jersey district court described the tension between a rule that "could 'result in an erosion of evidence capable of warranting the impeachment designation' " and a rule that would undermine the broad disclosure provisions of the Federal Rules of Civil Procedure. *Id.* (quoting *Hayes*, 338 F. Supp. 2d at 503).

The Court concludes that, under either of the standards used by other courts, the jacket is not admissible. Under the standard adopted by the First and Fifth Circuits—limiting the exception to "evidence that has no potential utility other than impeachment," *Standley*, 783 F.3d at 1283—the jacket is clearly not admissible. The alleged boot-marks on the jacket could potentially suggest that Defendants kicked or stepped on Plaintiff; as

---

[2] While the *Standley* Court considered a *witness* who was not disclosed during discovery and the issue before this Court is *tangible evidence* that was not disclosed during discovery, the analysis of the Court of Appeals is equally applicable here because the applicable language of the exception—"unless the use would be solely for impeachment"—is applicable both to witness testimony and to tangible evidence. *See* Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii).

2

this case revolves around an altercation between the parties and includes claims for assault and battery and other Constitutional violations against Defendants, any evidence that could be used to suggest that Defendants kicked Plaintiff has "potential utility other than impeachment."[3] *Id.* Therefore, under this standard, the jacket would be precluded.

The Court also concludes that, under the more flexible standard applied by the Seventh Circuit in *DeBiasio*,[4] it is proper to preclude the jacket, as well. Because of the nature of the evidence at issue, it is not possible that the jacket could be "strictly used to impeach." *Id.* The impeachment purpose of the evidence—discrediting Defendants' testimony that they did not kick Plaintiff—cannot be separated from the "substantive qualities" of the evidence because the allegation that Defendants assaulted Plaintiff is integral to Plaintiff's claims in this case. *Id.* Because the disputed evidence cannot be disentangled from the claims and defenses in this case, it cannot be admitted "solely for impeachment." *See id.* ("[B]ecause the testimony of witnesses offered to impeach was a part of the defendant's 'primary line of defense,' the witnesses should have been disclosed prior to trial and their testimony was properly excluded.") (citation omitted).

Furthermore, the Court concludes that Defendants were prejudiced by Plaintiff's failure to disclose the jacket during discovery—and by Plaintiff's failure to produce the jacket itself to Defendants until the October 23, 2015, Pretrial Conference, four years after the incident at issue. Defendants have represented that the trial strategy they pursued was premised, in part, on the lack of physical evidence. Defendants have further represented that, had they been aware of the jacket during discovery, they would have explored the presence of the boot mark and the chain of custody of the jacket in Plaintiff's deposition. They also represented that, had they been made aware of the jacket in a timely fashion, they may have taken depositions of other individuals, may have had the jacket tested, and may have investigated further whether the prints match the shoe size of the Defendants. In sum, discovery cannot be reopened without in essence reopening all aspects of discovery—depositions, experts, and written discovery.

---

[3] The Court notes that the Plaintiff has represented that the jacket was admitted as evidence in his criminal trial for assault on a police officer. Although more information is not in the record regarding the admission of the jacket, this fact supports the conclusion that the jacket could be understood by a jury in this case as substantive evidence regarding the incidents in question in this case—even if the jury was instructed that the jacket was only to be used as impeachment evidence.

[4] It is worth noting that, as the First Circuit Court of Appeals has explained, "the ruling in *Debiasio* was highly factspecific." *Klonoski v. Mahlab*, 156 F.3d 255, 270 (1st Cir. 1998). Furthermore, the analysis of the impeachment in *DeBiasio* may be properly considered dicta since the Seventh Circuit ultimately concluded that the evidentiary error was harmless. *See id.* ("In addition, despite its dicta regarding abuse of discretion, *Debiasio* held that the error was harmless, and affirmed the jury verdict.").

Finally, the Court notes that, having had an opportunity to examine the jacket during the October 23, 2015, it appears that the jacket itself is only minimally probative. An inspection of the jacket reveals that there are no boot-print or other dirt markings on the back of the jacket—as Plaintiff had represented—there are only dirt markings that may or may not be possible marks from the partial tread of a boot or shoe on one of the arms. In addition, having had an opportunity to see Plaintiff himself wear the jacket, for demonstration purposes, at the October 23, 2015, Pretrial Conference, the Court notes that the sleeves of the jacket are "baggy," which might constrain any inferences that could possibly be drawn from the presence of the alleged tread-marks on the sleeve.

The Court concludes that, because the use of the jacket does not qualify for the "solely for impeachment" exception to the disclosure requirement and because Plaintiff has not demonstrated that the failure to disclose is "substantially justified" or "harmless," the jacket may not be introduced into evidence. *See Standley*, 783 F.3d at 1281 (citing Fed. R. Civ. P. 37(c)(1)).

**Testimony of Attorney Jason Kalafat**

The Court previously concluded that the testimony of attorney Jason Kalafat would be precluded regarding attorney's fees. *See* Memorandum Opinion and Order dated October 22, 2015, ECF No. 67. In that Memorandum Opinion and Order, the Court discussed how Kalafat's testimony had not been disclosed in discovery in response to Defendants' discovery requests. Because the Court has concluded that the jacket itself is inadmissible, as explained above, and for the reasons stated in the Court's previous Memorandum Opinion and Order regarding the failure to identify testimony from Kalafat in discovery, the Court now concludes that Kalafat's testimony regarding the jacket is precluded as well.

**Testimony of Plaintiff Regarding Attorney's Fees for Criminal Proceedings**

In addition to the testimony of attorney Jason Kalafat, Plaintiff seeks to introduce testimony of Plaintiff himself about his payment of attorney's fees to Kalafat, as well as an engagement letter with respect Kalafat's representation of Plaintiff. The Court will allow the admission of the testimony and of the letter on the conditions stated below.

Over the course of these proceedings, Plaintiff has represented different information regarding payments to Kalafat and any payment arrangements with Kalafat. At the May 1, 2015, Pretrial Conference, Plaintiff stated to his attorney, and through his attorney to the Court, that he paid Kalafat $10,000 in cash. At the October 23, 2015, Pretrial Conference, Plaintiff represented that he paid Kalafat $2,000 in cash, with an additional $7,500 paid by credit card in installments. Plaintiff also presented an alleged engagement letter from Kalafat, which stated that $7,500 would be paid by credit card and laid out a schedule of payments; the engagement letter does not mention a cash payment. However, Plaintiff never identified Kalafat or produced the letter of engagement in response to

Defendant's discovery requests. Nor did Plaintiff ever mention payments or payment arrangements in his depositions—notwithstanding Plaintiff's counsel's previous representation to the contrary. (At the October 23, 2015, Pretrial Conference after reviewing the deposition transcripts, Plaintiff's counsel admitted that Plaintiff had not mentioned payments or payment arrangements during either of the times he was deposed.) The Court agrees with Defendants that Plaintiff should have disclosed Kalafat and the engagement letter in response to Defendants' discovery requests.

Defendants further argue that they are prejudiced by the failure to disclose the engagement latter and the testimony regarding the payments because they would have investigated whether the payments were actually made and would have conducted discrete additional discovery regarding the payments and payment arrangements. However, the Court concludes that the prejudice may be cured at this point, particularly given that a trial date was not set until the October 23, 2015, Pretrial Conference, given that the Court scheduled an additional Pretrial Conference for January 20, 2016, and given that the trial is not set to begin until May 2, 2016. Accordingly, the Court concludes it is in the interest of justice to allow Plaintiff to present this testimony and supporting evidence regarding attorney's fees—on the conditions stated here.[5]

*If Plaintiff continues to seek to present testimony regarding attorneys' fees at trial, the Court will allow Defendants to take Plaintiff's deposition, limited to the subject matter of attorney's fees. Plaintiff must pay the cost for the deposition; however, Plaintiff is not required to pay Defendants' attorney's fees as Defendant's counsel would have had to prepare for the deposition even if Plaintiff's disclosure had occurred in a timely fashion. The deposition must be completed before the January 20, 2016, Pretrial Conference. No later than five business days prior to the deposition Plaintiff must provide Defendants the engagement letter and any other materials they intend to rely on pertaining to attorney's fees. Plaintiff is precluded at trial and at the deposition from relying on any other materials regarding attorney's fees if not produced at that time.*

**MPD Use of Force Report and PD 119 Witness Statement from Officer Devlin**

The Court previously determined that the MPD Use of Force Report and the PD 119 Witness Statement would be admissible as business records—assuming the proper

---

[5] The Court notes that the prejudice caused by the failure to timely disclose testimony and evidence regarding attorney's fees is different from the prejudice stemming from Plaintiff's failure to disclose the jacket, discussed above. Whereas the jacket, as evidence, is pertinent to the core claims in this action and whereas the timely disclosure of that evidence might have changed Defendant's overall litigation strategy and would involve reopening most, if not all, discovery, the evidence regarding attorney's fees is limited to a discrete set of evidence that pertains only to damages for the malicious prosecution claim and not to the substantive core of any of the claims in this action.

foundation is laid at trial. At the October 23, 2015, Plaintiff raised a continuing objection to the admissibility of the narrative portions of both of those documents. The Court has considered this issue once again, including the authority cited by Plaintiff at the Pretrial Conference, and concludes that narratives are admissible—on the condition that the testimony at trial supports the conclusion that the material within the narratives was within the personal knowledge of Office Devlin, who wrote those narratives.

Turning to other specific objections to material within the reports, Plaintiff seeks the redaction of several items within the "Subject Activity" portion of the Use of Force: the reference to "DUI," the reference to "alcohol," and the reference to "attempt arrest." The Court agrees that the reference to "DUI" and "alcohol" must be redacted, but concludes that the reference to "attempt arrest" need not be redacted.

Plaintiff also objects to the statements within the narrative in each report that refer to the use of alcohol and seek for those statements to be redacted. The Court concludes that those statements do not need to be redacted. The Court concludes that this information is probative to the issues that will be before the jury, including the reasonableness of the Defendants' actions in the events underlying this case. The Court will consider an appropriate instruction to the jury in connection with the admission of these statements, as discussed at the October 23, 2015, Pretrial Conference in light of the submission of proposed instructions by the parties.

*In sum, the check boxes associated with the words "DUI" and "alcohol" in the "Subject Activity" section of the Use of Force Report must be redacted (including the words "DUI" and "alcohol"). Otherwise, the two reports are admissible on the conditions stated here and in the Court's October 22, 2015, Memorandum Opinion and Order.*

**Orders**

It is hereby **ORDERED** that

- Plaintiff's jacket is inadmissible;
- testimony by attorney Jason Kalafat is precluded as to the jacket;
- the MPD Use of Force Report and the PD 119 Witness Statement of Officer Devlin are admissible on the conditions stated above; and
- Plaintiff's testimony regarding attorney's fees and the engagement letter are not precluded and may be presented at trial as evidence on the conditions stated above.

**SO ORDERED.**

_/s/_  
COLLEEN KOLLAR-KOTELLY  
United States District Judge